UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05- *355-JBS* |
| | | HON. *Jerome B. Simandle* |
| v. | : | |
| | | |
| D-1   CHENG MING HSU, | : | |
|    a/k/a "Bruce," | | |
| D-2   CHANG SHAN LIU, | : | 18 U.S.C. § 1962(d) |
|    a/k/a "Charles Liu," | | 18 U.S.C. § 371 |
| D-3   MAY LIU, | : | 18 U.S.C. § 545 |
|    a/k/a "May Chin," | | 18 U.S.C. § 1956 |
| D-4   CO KHANH TANG, | : | 18 U.S.C. § 1957 |
|    a/k/a "Keith," | | 18 U.S.C. § 2320 |
| D-5   XIAO FENG WEI, | : | 18 U.S.C. § 2342 |
|    a/k/a "Chen Wen Juan," | | 18 U.S.C. § 2 |
|    a/k/a "Mr. Chen," | : | 18 U.S.C. § 982 |
| D-6   WEI LI GU, | | 18 U.S.C. § 1963 |
| D-7   SHEN WEN CHEN, | : | |
| D-8   CHANG HUO JUNG, | | |
| D-9   SHUANG YING HUANG, | : | |
|    a/k/a "Tina," | | |
| D-10  HUA YOU, | : | |
|    a/k/a "Lee Fan Ming," | | |
|    a/k/a "Richard," | : | |
|    a/k/a "Ah Keung," | | |
| D-11  TIE HUA CHEN, | : | |
| D-12  TAT CHUI WONG, | | |
|    a/k/a "Sunny" | : | |
| D-13  KA HO STANLEY AU, | | |
| D-14  NHI LAM WIGET, | : | |
|    a/k/a "Kwai Ping Tse," | | |
|    a/k/a "Nicky Wong" | : | |
| D-15  YANG GUANG LU, | | |
|    a/k/a "Eddie Lu," | : | |
|    a/k/a "Lu Guang Yang," | | |
|    a/k/a "Eric Ho," | : | |
|    a/k/a "Yang Lu," | | |
|    a/k/a "Mike" | : | |
| and | | |
| D-16  CHING YU GUO, | : | |
|    a/k/a "Michael Guo" | | |
| | : | |
| Defendants | | |
| | : | |

## INDICTMENT

THE GRAND JURY IN AND FOR THE DISTRICT OF NEW JERSEY,

SITTING AT CAMDEN, CHARGES:

### INTRODUCTION

1.      At all relevant times, a "Trademark," as defined in Title 15, United States Code, Section 1127, is any word, name, symbol or device or any combination thereof, used by a person to distinguish his or her goods, including a unique product, from that manufactured or sold by others and to indicate the source of the goods.  The term "Mark" includes any trademark.

2.      At all relevant times, a "Registered Trademark," as defined in Title 15, United States Code, Section 1127, is a trademark registered in the United States Patent and Trademark Office according to law.

3.      At all relevant times, and for purposes of this indictment, a "Counterfeit Mark," as defined in Title 18, United States Code, Section 2320 (e)(1)(A), is a spurious mark that is used in connection with trafficking in goods and services which is identical to, or substantially indistinguishable from, a mark registered for those goods on the principal register for the United States Patent and Trademark Office, and the use of which is likely to cause confusion, to cause mistake, or to deceive the potential purchasers of the counterfeit goods.

4.      At all relevant times, and for purposes of this indictment, the term "Counterfeit Cigarettes" refers to cigarettes bearing counterfeit marks and trademarks.

5.      Contraband Cigarettes is a statutorily defined term which means a quantity in excess of 60,000 cigarettes (generally seven cases of cigarettes) which bear no evidence of the payment of applicable state cigarette taxes in the state where such cigarettes are found, if such

2

state requires a stamp, impression or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes. 18 U.S.C. § 2341(2).

6.     States have the concurrent authority and jurisdiction to enact and enforce cigarette tax laws, to provide for the confiscation of cigarettes and other property seized for violations of such laws, and for the administration of such laws, including the imposition of cigarette tax rates. For example, from July 2003 through September 2004, the state cigarette tax on cigarettes sold in New Jersey was $2.05 per package or $20.50 per carton.

7.     Most states, in order to evidence the payment of applicable state cigarette taxes in the state where such cigarettes are found, require a stamp, impression, or other indication to be placed on packages or other containers of cigarettes.

8.     At all relevant times, the states discussed in this Indictment whose cigarette taxes were not paid, namely, New Jersey, New York, Illinois and California, imposed a state tax on cigarettes and required a state cigarette tax stamp on the cigarette packages.

9.     The brand name cigarettes "Marlboro," "Marlboro 100's," "Marlboro Lights" and "Marlboro Lights 100's" are cigarettes manufactured in the United States by Phillip Morris USA. At all relevant times, the brand names "Marlboro," "Marlboro 100's," "Marlboro Lights" and "Marlboro Lights100's" were registered trademarks of Phillip Morris USA.

10.     The brand name cigarettes "Newport," and "Newport 100's" are cigarettes manufactured in Greensboro, North Carolina by the Lorillard Tobacco Company.  At all relevant times, the brand names "Newport" and "Newport 100's" were Registered Trademarks of the Lorillard Licensing Company, LLC and the trademarks and the right to enforce the trademarks were assigned to the Lorillard Tobacco Company.

11.     The brand name cigarettes "State Express 555" are cigarettes manufactured by the

3

Ardath Tobacco Company, LTD, in England. At all relevant times, the brand name "State Express 555" was a Registered Trademark of the Ardath Tobacco Company, LTD, and the trademark for "State Express 555" was registered in the United States.

12.     The brand name cigarettes "duMaurier Lights" and "Player's Lights" are cigarettes manufactured in Canada by Imperial Tobacco Canada, Ltd. At all relevant times, the brand names "duMaurier Lights" and "Player's Lights" were Registered Trademarks in Canada and the United States. In the United States, the trademark for "duMaurier Lights" was owned by Peter Jackson (overseas) Ltd. and the trademark for "Player's Lights" was owned by Phillip Morris USA.

13.     A "Duty" refers to, among other things, a tax on merchandise imported into the United States. For the years 2001 through 2004, the duty on imported merchandise, including cigarettes, was $29.09 per kilogram. For example, a container bearing 42,300 cartons (846 cases) weighed approximately 14,362 kg and owed duties of approximately $331,618 to the United States.

14.     "Bill of Lading" refers to a document that a transportation company possesses, acknowledging that it has received goods, which temporarily serves as the title to the goods during the transport of the merchandise.

15.     "Customs Broker" refers to the importer's agent, licensed by the Bureau of Customs and Border Protection ("Customs"), to enter and clear goods through the United States border.

16.     As used in this indictment, the term "container" is a reference to a large metal box approximately 40 feet in length used to transport bulk cargo on board ships as well as on tractor-trailer trucks. It is capable of transporting a maximum of approximately 1,100 cases of

4

cigarettes.

17.    As used in this indictment, the term "Case" or "Master case" of cigarettes generally describes a case of Contraband Cigarettes which contains fifty (50) cartons of cigarettes; the term "Carton" of cigarettes describes a carton which contains ten (10) packages; the term "Package" of cigarettes describes a package which contains twenty (20) individual cigarettes. Therefore, one case of cigarettes typically contains 10,000 individual cigarettes. In some instances, a case of cigarettes may contain sixty (60) cartons of cigarettes or 12,000 individual cigarettes. Legitimate cases of cigarettes always contain sixty (60) cartons.

18.    During all times material to this indictment, Pfizer, Inc. was an internationally known producer of prescription drugs and the manufacturer and distributor of the prescription drug Viagra. Pfizer, Inc. holds the patents on Sildenafil Citrate (the active ingredient in Viagra), the process and preparation of Viagra, the tablet design shape of Viagra, and the tablet design shape plus color of Viagra. In short, at all material times, Pfizer, Inc. was the only legal producer of Viagra, which Pfizer, Inc. makes at plants in France and Puerto Rico, among others. Pfizer, Inc. has never produced Viagra in China. The brand name "Viagra" is a Registered Trademark of Pfizer, Inc.

## COUNT ONE

### ( Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act (RICO) )

**D-1**  **CHENG MING HSU,**
     **a/k/a "Bruce,"**
**D-2**  **CHANG SHAN LIU,**
     **a/k/a "Charles Liu,"**
**D-3**  **MAY LIU,**
     **a/k/a "May Chin"**
**and**
**D-4**  **CO KHANH TANG,**
     **a/k/a "Keith"**

### THE ENTERPRISE

1.      The general allegations in the Introduction are hereby repeated and incorporated herein by reference.

2.      At various times relevant to this Indictment, CHENG MING HSU, a/k/a "Bruce," CHANG SHAN LIU, a/k/a "Charles Liu" and MAY LIU, a/k/a "May Chin," CO KHANH TANG, a/k/a "Keith," defendants herein, Counterfeit Cigarette manufacturers in China, not named as defendants herein, and others both known and unknown to the Grand Jury, were members and associates of the "Hsu Enterprise," a criminal organization whose members and associates engaged in diverse criminal activities including, but not limited to, trafficking in goods bearing counterfeit marks, trafficking in counterfeit and contraband cigarettes and money laundering, and which operated in the District of New Jersey and the States of New York, Illinois, California and points in between, and the country of Canada and elsewhere.

3.      The Hsu Enterprise, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the

6

enterprise"), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise was bound together by a common heritage (Chinese), common languages (various dialects of Chinese) and a common purpose of generating large sums of cash through the conduct of the above listed criminal activities. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

<b><u>Purposes of the Enterprise</u></b>

4.      The purposes of the enterprise included the following:

A.      Enriching the members and associates of the Hsu Enterprise through, among other things, trafficking in goods bearing counterfeit marks, trafficking in counterfeit and contraband cigarettes and money laundering.

B.      Promoting and enhancing the enterprise and its members' and associates' activities.

<b><u>Roles of the Defendants</u></b>

5.      The defendants participated in the operation and management of the enterprise. The enterprise was structured in the following manner, and the defendants and other persons employed by and associated with the enterprise functioned in the following roles:

A.      CHENG MING HSU was a high level organizer and leader of a multimillion dollar a year counterfeit and contraband cigarette trafficking organization that operated from at least as early as in or about November 1999 through and including the date of this Indictment. The counterfeit cigarettes, including counterfeit Marlboro and Newport brand cigarettes, were produced at

7

factories in China by unknown cigarette manufacturers, not named as defendants herein, affiliated with CHENG MING HSU.    CHENG MING HSU made arrangements with the cigarette manufacturers to produce quantities of counterfeit cigarettes, insured that bribes were paid to customs officials in China and arranged for the shipment of the counterfeit cigarettes to the United States.  The counterfeit cigarettes were imported into the United States through Port Newark, New Jersey in containers utilizing bills of lading, invoices and packing lists which falsely listed the contents of the containers as either crafts, wicker, bamboo or rattan products, plastic toys or other similar items.  The enterprise also imported containers of counterfeit cigarettes through other ports, including the Port of Long Beach in California.  Each shipment contained approximately 800-1100 cases of counterfeit cigarettes, which equates to approximately 8-11 million cigarettes per load.   The enterprise also utilized undercover federal law enforcement special agents believed to be members of a separate criminal organization to assist in smuggling the containers into Port Newark, storing the counterfeit cigarettes and delivering the cigarettes to buyers at the direction of CHENG MING HSU and other members of the enterprise.  CHENG MING HSU also negotiated with the buyers of the counterfeit and contraband cigarettes in the United States and Canada and directed the actions of lower level members of the conspiracy, including CHANG SHAN LIU, a/k/a "Charles Liu," his wife MAY LIU,  a/k/a "May Chin," CO KHANH TANG, a/k/a "Keith," and others involved in the transportation, storage and delivery of counterfeit and contraband cigarettes, including Xiao Feng Wei, a/k/a "Chen Wen Juan," a/k/a "Mr. Chen," Shen

8

Wen Chen, Chang Huo Jung, Hua You, a/k/a "Lee Fan Ming," a/k/a "Richard," a/k/a "Ah Keung," Tie Hua Chen, Tat Chui Wong, a/k/a "Sunny," Ka Ho Stanley Au, Nhi Lam Wiget, a/k/a "Kwai Ping Tse," a/k/a "Nicky Wong," Yang Guang Lu, a/k/a "Eddie Lu," a/k/a "Lu Guang Yang," a/k/a "Eric Ho," a/k/a "Yang Lu," a/k/a "Mike" and Ching Yu Guo, a/k/a "Michael Guo," co-defendants not charged in Count One.

B.   CHANG SHAN LIU and his wife MAY LIU were intermediaries or "brokers" for CHENG MING HSU who made arrangements with undercover law enforcement agents believed to be members of a separate criminal organization to import, store, transport and deliver counterfeit and contraband cigarettes to other members of the enterprise.   CHANG SHAN LIU and MAY LIU forwarded fraudulent shipping documents to the undercover agents, met often to coordinate deliveries and paid and caused the payment of between approximately $50,000 to $70,000 to undercover law enforcement agents for each container smuggled into Port Newark.  CHANG SHAN LIU and MAY LIU also negotiated with buyers and collected proceeds from the trafficking of counterfeit and contraband cigarettes, some of which was given to undercover law enforcement agents to launder through undercover bank accounts for the benefit of CHENG MING HSU.

C.   CO KHANH TANG worked as a distributor of counterfeit and contraband cigarettes for CHENG MING HSU.   CO KHANH TANG was responsible for the transportation, storage, and distribution of certain loads of counterfeit and contraband cigarettes delivered to locations by undercover agents. CO KHANH TANG supervised other members of the enterprise, including Hua

You, Tie Hua Chen, Nhi Lam Wiget, Yang Guang Lu and Ching Yu Guo, who were responsible for renting vehicles and storage facilities used in the transportation, storage and distribution of the counterfeit and contraband cigarettes and loading and unloading the cigarettes upon delivery to a particular location. Tat Chui Wong and other co-conspirators presently unknown to the Grand Jury also worked as distributors and transporters for CHENG MING HSU and supervised other members of the enterprise, including Xiao Feng Wei, Shen Wen Chen, Chang Huo Jung and Ka Ho Stanley Au, who were involved in the delivery, transportation and storage of counterfeit and contraband cigarettes.    The enterprise employed drivers and undercover law enforcement agents posing as members of a separate criminal organization to transport the counterfeit and contraband cigarettes from an undercover warehouse in New Jersey to locations in New Jersey, New York, Illinois, California and Canada where CO KHANH TANG,  Tat Chui Wong and other members of the enterprise took possession of the cigarettes. Among other places, the cigarettes were transported and delivered to warehouses, public storage facilities and parking areas where other trucks, usually rental vehicles, took the cigarettes and delivered them to unknown locations. CHENG MING HSU maintained a warehouse in City of Industry, California where counterfeit and contraband cigarettes were delivered and stored.

D. The buyers of the counterfeit and contraband cigarettes, being persons employed by and associated with the enterprise, and known and unknown to the Grand Jury but not named as defendants herein, would then re-distribute the

10

cigarettes within the States of New Jersey, New York (including New York City), Illinois, California and Canada, providing substantial cash profits to the enterprise. Certain buyers maintained a warehouse in Franklin Park, Illinois to store and facilitate the distribution of counterfeit and contraband cigarettes.

E.       The transactions involving counterfeit and contraband cigarettes were usually paid for in cash. CHENG MING HSU, CHANG SHAN LIU and MAY LIU received large amounts of cash from buyers in payment for the counterfeit and contraband cigarettes. Some of these proceeds were provided to a co-conspirator not named as a defendant herein and undercover law enforcement agents to "launder" through bank accounts, companies and other means  to conceal and disguise the nature, location, origin and source of the money and to avoid transaction reporting requirements, for the benefit of CHENG MING HSU. Once the laundered funds were received, CHENG MING HSU would wire transfer the funds to overseas bank accounts in the names of other individuals which were maintained and controlled by CHENG MING HSU. Other proceeds were provided to undercover law enforcement agents by CHENG MING HSU, CHANG SHAN LIU and MAY LIU and others known to the Grand Jury, as payment for the smuggling of containers and to promote the scheme.

F. The criminal enterprise sought to expand its avenues for making illegal profits by trafficking and attempting to traffic in other counterfeit goods, including designer handbags, wallets and wristwatches and the prescription drug Viagra. CHENG MING HSU and CHANG SHAN LIU provided samples of some of the

11

available counterfeit goods mentioned above to undercover law enforcement agents.
CHENG MING HSU and CHANG SHAN LIU arranged for a shipment of counterfeit
Viagra to be included in a shipment of counterfeit cigarettes imported into the United
States from China.

## THE RACKETEERING CONSPIRACY

6.     From approximately in or about November 1999 and continuing through the date of
this Indictment, in the District of New Jersey and elsewhere,

**CHENG MING HSU,**
**CHANG SHAN LIU,**
**MAY LIU**
**and**
**CO KHANH TANG**

and others both known and unknown to the Grand Jury, being persons employed by and associated
with the enterprise described above, which enterprise was engaged in, and the activities of which
affected interstate and foreign commerce, did knowingly and intentionally conspire and agree with
each other and with other persons known and unknown to the Grand Jury, to violate Title 18, United
States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the
conduct of the affairs of the enterprise through a pattern of racketeering activity.

### Pattern of Racketeering Activity

7.     The pattern of racketeering activity, as defined by Title 18, United States Code,
Section 1961(1) and 1961(5) through which the defendants, CHENG MING HSU, CHANG SHAN
LIU, MAY LIU and CO KHANH TANG did combine, conspire and agree with each other and others
to conduct and participate in the conduct of the affairs of the enterprise consisted of acts involving

(1) trafficking in goods bearing counterfeit marks, in violation of Title 18, United States Code, Section 2320;  (2) trafficking in contraband cigarettes, in violation of Title 18, United States Code, Section 2342; (3) money laundering, in violation of Title 18, United States Code, Section 1956; and (4) engaging in monetary transactions in criminally derived property, in violation of Title 18, United States Code, Sections 1957, which acts are set forth more particularly below in Racketeering Acts 1 through 20.

8.    It was part of the conspiracy that each defendant agreed that at least two acts of racketeering activity would be committed by a conspirator in the conduct of the affairs of the enterprise.  The pattern of racketeering activity consisted of the following acts:

**Racketeering Act # 1**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #1:

**Racketeering Act # 1(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 13]

9.    Between on or about December 16, 2001 and on or about January 11, 2002, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did intentionally traffic, attempt to traffic and cause the trafficking in goods, namely approximately 846 cases of cigarettes (shipment 1), and did knowingly use and cause the use of a counterfeit mark on and in connection with such goods, that is, the brand name "Marlboro," which counterfeit mark was identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake and to deceive, in violation of

Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act # 1(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 23]

10.     On or about January 8, 2002, in the District of New Jersey, the Eastern District of New York and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 350 cases of cigarettes from shipment 1 which bore no evidence of the payment of applicable state cigarette taxes for the state of New York, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act # 1(c) - (Trafficking in Contraband Cigarettes)** [relates to Count 24]

11.     On or about January 11, 2002, in the District of New Jersey, the Eastern District of New York and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 495 cases of cigarettes from shipment 1 which bore no evidence of the payment of applicable state cigarette taxes for the state of New York, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #2**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #2:

**Racketeering Act #2(a) (Monetary Transaction in Criminally Derived Property)** [relates to

14

Count 55]

12.     On or about January 18, 2002, in the District of New Jersey and elsewhere,

CHANG SHAN LIU and MAY LIU did knowingly engage and attempt to engage in a monetary

transaction by, through and to a financial institution, affecting interstate or foreign commerce, in

criminally derived property of a value greater than $10,000, that is, the transfer of funds in the

approximate amount of $14,000, such property having been derived from a specified unlawful

activity, that is, trafficking in contraband cigarettes contrary to Title 18, United States Code, Section

2342, in violation of Title 18, United States Codes, Sections 1957 and 2.

**Racketeering Act #2(b)  (Monetary Transaction in Criminally Derived Property)** [relates to

Count 56]

13.     On or about January 18, 2002, in the District of New Jersey and elsewhere,

CHANG SHAN LIU and MAY LIU did knowingly engage and attempt to engage in a monetary

transaction by, through and to a financial institution, affecting interstate or foreign commerce, in

criminally derived property of a value greater than $10,000, that is, the transfer of funds in the

approximate amount of $20,000, such property having been derived from a specified unlawful

activity, that is, trafficking in contraband cigarettes contrary to Title 18, United States Code, Section

2342, in violation of Title 18, United States Codes, Sections 1957 and 2.

**Racketeering Act # 3**

The defendants named below committed the following acts, either one of which alone

constitutes the commission of Racketeering Act #3:

**Racketeering Act # 3(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 14]

15

14.     Between on or about July 17, 2002 and on or about August 7, 2002, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did intentionally traffic and attempt to traffic and cause the trafficking in goods, namely approximately 864 cases of cigarettes (shipment 2), and did knowingly use and cause the use of counterfeit marks on and in connection with such goods, that is, the brand names "Marlboro" and "Marlboro Lights" which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #3(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 25]

15.     On or about August 7, 2002, in the District of New Jersey, the Central District of California and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 864 cases of cigarettes from shipment 2 which bore no evidence of the payment of applicable state cigarette taxes for the state of California, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #4**

The defendants named below committed the following acts, either one of which alone constitutes the commission of Racketeering Act #4:

**Racketeering Act #4(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 15]

16

16.     Between on or about October 23, 2002 and November 7, 2002, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did intentionally traffic and attempt to traffic and cause the trafficking in goods, namely approximately 1,050 cases of cigarettes (shipment 3), and did knowingly use and cause the use of a counterfeit mark on and in connection with such goods, that is, the brand name "Marlboro" which counterfeit mark was identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #4(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 26]

17.     On or about November 7, 2002, in the District of New Jersey, the Central District of California and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 1,050 cases of cigarettes from shipment 3 which bore no evidence of the payment of applicable state cigarette taxes for the state of California, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #5 - (Monetary Transaction in Criminally Derived Property)** [relates to Count 57]

18.     On or about November 14, 2002, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly engage and attempt to

17

engage in a monetary transaction by, through and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of funds in the approximate amount of $55,000, such property having been derived from a specified unlawful activity, that is, trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342 , in violation of Title 18, United States Codes, Sections 1957 and 2.

## Racketeering Act #6

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #6:

## Racketeering Act #6(a) - (Trafficking in Goods Bearing Counterfeit Marks)

[relates to Count 16]

19.    Between on or about November 27, 2002 and on or about April 1, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG did intentionally traffic and attempt to traffic and cause the trafficking in goods, namely approximately 2,129 cases of cigarettes (shipments 4 and 5), and did knowingly use and cause the use of counterfeit marks on and in connection with such goods, that is, the brand names "Marlboro" and "Marlboro Lights" which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake, and to deceive, in violation of  Title 18, United States Code, Sections 2320(a) and 2.

## Racketeering Act #6(b) - (Trafficking in Contraband Cigarettes) [relates to Count 27]

20.    On or about December 12, 2002, in the District of New Jersey, the Eastern

18

District of New York and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 100 cases of cigarettes from shipments 4 and 5 which bore no evidence of the payment of applicable state cigarette taxes for the state of New York, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #6(c) - (Trafficking in Contraband Cigarettes)** [relates to Count 28]

21.     On or about January 29, 2003, in the District of New Jersey and elsewhere, CHEN MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 100 cases of cigarettes from shipments 4 and 5 which bore no evidence of the payment of applicable state cigarette taxes for the state of New Jersey, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #6(d) - (Trafficking in Contraband Cigarettes)** [relates to Count 29]

22.     On or about February 11, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 100 cases of cigarettes from shipments 4 and 5 which bore no evidence of the payment of applicable state

19

cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #6(e) - (Trafficking in Contraband Cigarettes)** [relates to Count 30]

23.     On or about February 19, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 200 cases of cigarettes from shipments **4** and **5** which bore no evidence of the payment of applicable state cigarette taxes for the state of New Jersey, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #6(f) - (Trafficking in Contraband Cigarettes)** [relates to Count 31]

24.     On or about February 26, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 300 cases of cigarettes from shipments **4** and **5** which bore no evidence of the payment of applicable state cigarette taxes for the state of New Jersey, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #6(g) - (Trafficking in Contraband Cigarettes)** [relates to Count 32]

25.     On or about March 7, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly

and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 225 cases of cigarettes from shipments 4 and 5 which bore no evidence of the payment of applicable state cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #6(h) - (Trafficking in Contraband Cigarettes)** [relates to Count 33]

26.     On or about March 18, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 200 cases of cigarettes from shipments 4 and 5 which bore no evidence of the payment of applicable state cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #6(i) - (Trafficking in Contraband Cigarettes)** [relates to Count 34]

27.     On or about March 27, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 100 cases of cigarettes from shipments 4 and 5 which bore no evidence of the payment of applicable state

21

cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

## Racketeering Act #6(j) - (Trafficking in Contraband Cigarettes) [relates to Count 35]

28.     On or about April 1, 2003, in the District of New Jersey, the Central District of California and elsewhere, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 807 cases of cigarettes from shipments 4 and 5 which bore no evidence of the payment of applicable state cigarette taxes for the state of California, in violation of Title 18, United States Code, Sections 2342(a) and 2.

## Racketeering Act # 7

The defendants named below committed the following acts, either one of which alone constitutes the commission of Racketeering Act #7:

## Racketeering Act #7(a) - (Laundering Monetary Instruments) [relates to Count 44]

29.     On or about February 20, 2003 through on or about February 21, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part: (1) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and (2) to avoid a transaction reporting requirement under Federal law, did knowingly and willfully conduct, attempt to conduct and cause the conducting of a financial

22

transaction affecting interstate and foreign commerce, specifically the transfer, delivery, and other disposition of approximately $50,000 in United States currency, involving the proceeds of specified unlawful activity, namely trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United States Code, Sections 1956(a)(1) and 2.

**Racketeering Act #7(b) - (Laundering Monetary Instruments)** [relates to Count 50]

30.     On or about February 21, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU, knowing that the funds involved in the transmission represented the proceeds of some form of unlawful activity, namely trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, and knowing that such transmission was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and the control of the proceeds of specified unlawful activity, namely trafficking in contraband cigarettes, did knowingly and willfully transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer funds, that is, approximately $50,000 in United States currency, from a place in the United States to a place outside the United States, that is, Taiwan, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #8**

The defendants named below committed the following acts, either one of which alone constitutes the commission of Racketeering Act #8:

**Racketeering Act #8(a) - (Laundering Monetary Instruments)** [relates to Count 45]

31.     On or about February 27, 2003 through on or about March 3, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU and CHANG SHAN LIU, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful

23

activity, and knowing that the transaction was designed in whole or in part: (1) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and (2) to avoid a transaction reporting requirement under Federal law, did conduct, attempt to conduct and cause the conducting of a financial transaction affecting interstate and foreign commerce, specifically the transfer, delivery, and other disposition of approximately $20,000 in United States currency, involving the proceeds of specified unlawful activity, namely trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United States Code, Sections 1956(a)(1) and 2.

**Racketeering Act #8(b) - (Laundering Monetary Instruments)** [relates to Count 51]

32.     On or about March 3, 2003, in the District of New Jersey and elsewhere, CHEN MING HSU and CHANG SHAN LIU, knowing that the funds involved in the transmission represented the proceeds of some form of unlawful activity, and knowing that such transmission was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, namely trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, did knowingly and willfully transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer funds, that is, approximately $20,000 in United States currency, from a place in the United States to a place outside the United States, that is, Hong Kong, China, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #9 - (Laundering Monetary Instruments)** [relates to Count 46]

33.     On or about April 1, 2003 through on or about April 18, 2003, in the District of New Jersey, the Northern District of Illinois, the District of Delaware, the Central District of California

24

and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part: (1) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and (2) to avoid a transaction reporting requirement under Federal law, did knowingly and willfully conduct, attempt to conduct and cause the conducting of a financial transaction affecting interstate and foreign commerce, specifically the transfer, delivery, and other disposition of approximately $57,600 in United States currency, involving the proceeds of specified unlawful activity, namely trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United States Code, Sections 1956(a)(1) and 2.

**Racketeering Act #10 - (Laundering Monetary Instruments)** [relates to Count 47]

34.    On or about April 19, 2003, in the Northern District of Illinois, the Central District of California and elsewhere, CHENG MING HSU and CHANG SHAN LIU, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part: (1) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and (2) to avoid a transaction reporting requirement under Federal law, did knowingly and willfully conduct, attempt to conduct and cause the conducting of a financial transaction affecting interstate and foreign commerce, specifically the transfer, delivery, and other disposition of approximately $70,000 in United States currency, involving the proceeds of specified unlawful activity, namely trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United States Code, Section 1956(a)(1) and 2.

25