**Racketeering Act #11** - **(Laundering Monetary Instruments)** [relates to Count 52]

35.    On or about April 22, 2003, in the Central District of California and elsewhere, CHEN MING HSU, knowing that the funds involved in the transmission represented the proceeds of some form of unlawful activity, and knowing that such transmission was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, namely trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, did knowingly and willfully transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer funds, that is, approximately $107,600 in United States currency, from a place in the United States to a place outside the United States, that is, Hong Kong, China, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #12** - **(Laundering Monetary Instruments)** [relates to Count 48]

36.    On or about May 15, 2003, in the Northern District of Illinois, the Central District of California and elsewhere, CHENG MING HSU and CHANG SHAN LIU, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part: (1) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and (2) to avoid a transaction reporting requirement under Federal law, did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, specifically the transfer, delivery, and other disposition of approximately $47,000 in United States currency, involving the proceeds of specified unlawful activity, namely trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United States Code, Section 1956(a)(1) and 2.

**Racketeering Act #13 - (Laundering Monetary Instruments)** [relates to Count 53]

37.    On or about May 20, 2003 in the Central District of California and elsewhere,

CHENG MING HSU, knowing that the funds involved in the transmission represented the proceeds

of some form of unlawful activity, and knowing that such transmission was designed in whole or in

part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of

specified unlawful activity, namely trafficking in contraband cigarettes contrary to Title 18, United

States Code, Section 2342, did knowingly and willfully transmit and transfer, cause to be transmitted

and transferred, and attempt to transmit and transfer funds, that is, approximately $17,000 in United

States currency, from a place in the United States to a place outside the United States, that is, Hong

Kong, China, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #14**

The defendants named below committed the following acts, any one of which alone

constitutes the commission of Racketeering Act #14:

**Racketeering Act #14(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 17]

38.    Between on or about May 15, 2003 and June 24, 2003, in the District of New

Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did intentionally

traffic and attempt to traffic and cause the trafficking in goods, namely approximately 841 cases of

cigarettes (shipment 6), and did knowingly use and cause the use of counterfeit marks on and in

connection with such goods, that is, the brand names "Marlboro," "Marlboro Lights 100's" and

"Newport 100's," which counterfeit marks were identical with and substantially indistinguishable

from genuine marks in use and duly registered for those goods on the principal register in the United

27

States Patent and Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #14(b) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 18]

39.     On or about May 15, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did intentionally traffic, attempt to traffic and cause the trafficking in goods, namely approximately 8,000 Viagra pills (part of shipment 6), and did knowingly use and cause the use of a counterfeit mark on and in connection with such goods, that is, the brand name "Viagra" which counterfeit mark was identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #14(c) - (Trafficking in Contraband Cigarettes)** [relates to Count 37]

40.     On or about June 24, 2003, in the District of New Jersey, the Central District of California and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 839 cases of cigarettes from shipment 6 which bore no evidence of the payment of applicable state cigarette taxes for the state of California, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #15**

The defendants named below committed the following acts, either one of which alone constitutes the commission of Racketeering Act #15:

**Racketeering Act #15(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 19]

41.    Between on or about June 3, 2003 and on or about June 17, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did intentionally traffic, attempt to traffic and cause the trafficking in goods, namely approximately 898 cases of cigarettes (shipment 7), and did knowingly use and cause the use of counterfeit marks on and in connection with such goods, that is, the brand names "Marlboro Lights" and "Newport," which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #15(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 36]

42.    On or about June 17, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 898 cases of cigarettes from shipment 7 which bore no evidence of the payment of applicable state cigarette taxes for the state of California, in violation of Title 18, United States Code, Sections 2342(a) and 2.

29

**Racketeering Act # 16**

    The defendants named below committed the following acts, either one of which alone constitutes the commission of Racketeering Act #16:

**Racketeering Act #16(a) - (Laundering Monetary Instruments)** [relates to Count 49]

  43. On or about June 22, 2003 through on or about July 3, 2003, in the District of New Jersey, the Northern District of Chicago and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part: (1) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and (2) to avoid a transaction reporting requirement under Federal law, did conduct, attempt to conduct and cause the conducting of a financial transaction affecting interstate and foreign commerce, specifically the transfer, delivery, and other disposition of approximately $55,300 in United States currency, involving the proceeds of specified unlawful activity, namely trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United States Code, Sections 1956(a)(1) and 2.

**Racketeering Act #16(b) - (Laundering Monetary Instruments)** [relates to Count 54]

  44. On or about July 3, 2003, in the District of New Jersey and elsewhere, CHEN MING HSU, CHANG SHAN LIU and MAY LIU, knowing that the funds involved in the transmission represented the proceeds of some form of unlawful activity, and knowing that such transmission was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, namely trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, did knowingly and

willfully transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer funds, that is, approximately $55,300 in United States currency, from a place in the United States to a place outside the United States, that is, China, in violation of Title 18, United States Code, Sections 1956(a)(2) and 2.

**Racketeering Act #17**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #17:

**Racketeering Act #17(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 20]

45.   Between on or about July 28, 2003 and on or about August 27, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG did intentionally traffic, attempt to traffic and cause the trafficking in goods, namely approximately 884 cases of cigarettes (shipment 8), and did knowingly use and cause the use of a counterfeit mark on and in connection with such goods, that is, the brand name "Newport 100," which counterfeit mark was identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #17(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 38]

46.   On or about August 26, 2003, in the District of New Jersey and elsewhere, CHEN MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment,

transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 250 cases of cigarettes from shipment 8 which bore no evidence of the payment of applicable state cigarette taxes for the state of New Jersey, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #17(c) - (Trafficking in Contraband Cigarettes)** [relates to Count 39]

47.     On or about August 27, 2003, in the District of New Jersey and elsewhere, CHEN MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 634 cases of cigarettes from shipment 8 which bore no evidence of the payment of applicable state cigarette taxes for the state of New Jersey, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #18**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #18:

**Racketeering Act #18(a) - (Trafficking in Goods Bearing Counterfeit Marks)** [relates to Count 21]

48.     Between on or about September 2, 2003 and on or about November 17, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did intentionally traffic, attempt to traffic and cause the trafficking in goods, namely approximately 1103 cases of cigarettes (shipment 9), and did knowingly use and cause the use of counterfeit marks on and in connection with such goods, that is, the brand names "duMaurier Lights" and "Player's

32

Lights," which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #18(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 41]

49.     On or about November 17, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 1,103 cases of cigarettes from shipment 9 which bore no evidence of the payment of applicable state cigarette taxes for the state of New Jersey, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #19**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #19:

**Racketeering Act #19(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 22]

50.     Between on or about September 17, 2003 and on or about December 2, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG did intentionally traffic, attempt to traffic and cause the trafficking in goods, namely approximately 876 cases of cigarettes (shipment 10), and did knowingly use and

33

cause the use of counterfeit marks on and in connection with such goods, that is, the brand names "Newport 100" and "State Express 555" which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #19(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 40]

51.    On or about October 15, 2003, in the District of New Jersey and elsewhere, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 455 cases of cigarettes from shipment 10 which bore no evidence of the payment of applicable state cigarette taxes for the state of New Jersey, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #19(c) - (Trafficking in Contraband Cigarettes)** [relates to Count 42]

52.    On or about December 2, 2003, in the District of New Jersey, the Central District of California and elsewhere, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG did knowingly and unlawfully ship, transport, receive, possess, sell and distribute, and cause the shipment, transportation, receipt, possession, sale and distribution, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), specifically, approximately 421 cases of cigarettes from shipment 10 which bore no evidence of the payment of

applicable state cigarette taxes for the state of California, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #20**     **(Monetary Transaction in Criminally Derived Property)** [relates to Count 58]

53.     On or about October 31, 2003, in the District of New Jersey, the Central District of California and elsewhere, CHENG MING HSU, CHANG SHAN LIU and MAY LIU did knowingly engage and attempt to engage in a monetary transaction by, through and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of funds in the approximate amount of $50,000, such property having been derived from a specified unlawful activity, that is, trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United States Codes, Sections 1957 and 2.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the object thereof, the defendants and their co-conspirators committed and cause to be committed the following overt acts, among others, in the District of New Jersey and elsewhere:

1.     On or about November 23, 1999, CHANG SHAN LIU and MAY LIU met in Atlantic City, New Jersey with undercover Federal Bureau of Investigation Special Agents who were posing as members of a separate criminal organization (hereafter "undercover agents") and provided samples of counterfeit and contraband cigarettes to the undercover agents.

2.     On or about February 1, 2000, CHANG SHAN LIU met with undercover agents at a restaurant in Columbia, Maryland and discussed methods of importation of counterfeit and contraband cigarettes and money laundering services offered by the undercover agents.

3.     On or about April 24, 2001, MAY LIU met with undercover agents in Atlantic City and solicited the assistance of the undercover agents to smuggle counterfeit and contraband cigarettes in shipping containers into Port Newark, New Jersey.

4.     On or about May 30, 2001, MAY LIU engaged in a telephone conversation with an undercover agent and discussed the smuggling of counterfeit and contraband cigarettes.

5.     On or about June 19, 2001, MAY LIU met with undercover agents at a restaurant in Washington, D.C. and discussed the smuggling of counterfeit and contraband cigarettes.

6.     On or about August 30, 2001, CHANG SHAN LIU and MAY LIU met undercover agents at a restaurant, Queens, New York and discussed the smuggling of counterfeit and contraband cigarettes.

SHIPMENT 1

7.      On or about December 3, 2001, CHANG SHAN LIU and MAY LIU met with undercover agents at a rest stop in Delaware, furnished the agents with the bill of lading for the first container of counterfeit and contraband cigarettes, discussed security at Port Newark, New Jersey and discussed the transfer of money to the undercover agents.

8.      On or about December 6, 2001, CHANG SHAN LIU sent a facsimile copy of a document regarding the first container of counterfeit cigarettes to undercover agents in New Jersey.

9.      On or about December 11, 2001, CHANG SHAN LIU sent a facsimile copy of the invoice and packing list for an 846 case container of counterfeit and contraband Marlboro brand cigarettes falsely labeled as crafts (shipment 1)  to undercover agents in New Jersey.

10.     Prior to on or about December 16, 2001, CHENG MING HSU, CHANG SHAN LIU and MAY LIU acting in concert with others, caused the transportation from the People's Republic of China ("China") to Port Newark, New Jersey of shipment 1.

11.     On or about January 3, 2002, CHANG SHAN LIU and MAY LIU met with undercover agents at a rest stop in Asbury Park, New Jersey, informed the agents that the shipment would be delivered to buyers in New York, provided the agents with a contact telephone number for CHANG SHAN LIU in New York, discussed payment to the agents and received from the agents an 8 carton sample of counterfeit and contraband cigarettes from shipment 1.

12.     On or about January 8, 2002, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused the wire transfer of $100,000 from the account of a co-conspirator at the

37

Standard Savings Bank in Monterey, California to a bank account in Virginia utilized by undercover agents, as payment for the agents' assistance in facilitating the importation and transportation of shipment 1.

13.     On or about January 8, 2002, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused and directed the transportation of approximately 350 cases of counterfeit and contraband cigarettes from shipment 1 from the undercover warehouse in New Jersey to Brooklyn, New York where co-defendant Xiao Feng Wei took possession of the cigarettes.

14.     On or about January 11, 2002, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused the delivery of 495 cases of counterfeit and contraband cigarettes from shipment 1 from the undercover warehouse in New Jersey to Brooklyn, New York where co-defendants Xiao Feng Wei and Shen Wen Chen took possession of the cigarettes.

15.     On or about January 18, 2002, CHANG SHAN LIU and MAY LIU caused the wire transfer of $14,000 from a bank account in Virginia utilized by undercover agents to an account maintained by co-defendant Wei Li Gu at the Bank Fund Staff Federal Credit Union in Washington, D.C.

16.     On or about January 18, 2002, CHANG SHAN LIU and MAY LIU caused the wire transfer of $20,000 from a bank account in Virginia utilized by undercover agents to an account maintained by MAY LIU at the Bank Fund Staff Federal Credit Union in Washington, D.C.

17.     On or about January 24, 2002, MAY LIU caused the wire transfer of $8,000 from a bank account maintained by MAY LIU at the Bank Fund Staff Federal Credit Union in Washington, D.C. to a bank account maintained by CHENG MING HSU at the Cathay Bank in

California.

18.     On or about February 14, 2002, CHANG SHAN LIU and MAY LIU met with undercover agents at a rest stop in Delaware and discussed the smuggling of counterfeit and contraband cigarettes.

## SHIPMENT 2

19.     Prior to on or about July 17, 2002, CHENG MING HSU, CHANG SHAN LIU and MAY LIU acting in concert with others, caused the transportation to Port Newark, New Jersey of an 864 case container of counterfeit Marlboro and Marlboro Lights brand cigarettes falsely listed on the bill of lading, invoice and packing list as wicker and rattan products (shipment 2).

20.     On or about July 19, 2002, CHANG SHAN LIU sent to undercover agents in New Jersey by facsimile transmission a bill of lading and invoice for shipment 2 which falsely listed the contents of the container as wicker and rattan products.

21.     On or about August 6, 2002, CHENG MING HSU and CHANG SHAN LIU met with undercover agents in Hacienda Heights, California, and discussed the delivery of shipment 2.

22.     On or about August 7, 2002, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused and directed the delivery of shipment 2 from the undercover warehouse in New Jersey to a warehouse in Chino, California, where CHENG MING HSU, CHANG SHAN LIU and co-conspirators unknown to the Grand Jury took receipt of the counterfeit and contraband cigarettes.

23.     On or about August 7, 2002, CHENG MING HSU and CHANG SHAN LIU met

with undercover agents in Alhambra, California and paid the agents $54,970 for the agents' assistance in facilitating the importation and delivery of shipment 2.

SHIPMENT 3

24.     On or about August 22, 2002 CHANG SHAN LIU and MAY LIU met with an undercover agent in Atlantic City, New Jersey and informed the agent that CHENG MING HSU wanted to smuggle two shipments of counterfeit cigarettes into the United States in October.

25.     On or about September 26, 2002, CHANG SHAN LIU met with undercover agents in Linden, New Jersey, and advised that one container of counterfeit and contraband cigarettes shipped to the United States by CHENG MING HSU would arrive in October.

26.     On or about October 11, 2002, co-conspirators sent to undercover agents by facsimile transmission the bill of lading and invoice for a container of counterfeit and contraband Marlboro brand cigarettes totaling 1050 cases falsely listed on the bill of lading and invoice as wicker and rattan products (shipment 3).

27.     On or about October 14, 2002, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and informed the agent that the shipment of counterfeit and contraband cigarettes was to be delivered to California and that CHENG MING HSU was traveling to the United States from China.

28.     Prior to on or about October 23, 2002, CHENG MING HSU, CHANG SHAN LIU and MAY LIU, acting in concert with others, caused the transportation to Port Newark, New Jersey of shipment 3.

29.     On or about October 24, 2002, MAY LIU engaged in a telephone conversation with an undercover agent and was informed by the agent that shipment 3 had arrived at Port

40

Newark, New Jersey.

30.     On or about October 29, 2002, MAY LIU engaged in a telephone conversation with an undercover agent and was informed by the agent that shipment 3 would be delivered to the west coast the following Wednesday or Thursday.

31.     On or about November 6, 2002, CHENG MING HSU and CHANG SHAN LIU met with undercover agents in Hacienda Heights, California, showed the agents a warehouse CHENG MING HSU claimed to own with his brother, provided delivery instructions for shipment 3 and discussed the laundering of $200,000 to $250,000 that CHENG MING HSU would provide to undercover agents.

32.     On or about November 7, 2002, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused and directed the delivery of shipment 3 from the undercover warehouse in New Jersey to a warehouse in City of Industry, California, where CHENG MING HSU and CHANG SHAN LIU took receipt of the counterfeit and contraband cigarettes.

33.     On or about November 7, 2002, CHANG SHAN LIU met with undercover agents in City of Industry, California, provided agents with bills of lading and invoices for the next shipments of counterfeit and contraband cigarettes (shipments 4 and 5) and a sample of a counterfeit designer handbag and informed the agents that CHENG MING HSU would travel to New York to consummate the next transaction and would provide $200,000-$250,000 to agents to wire transfer to accounts in Hong Kong, China.

34.     On or about November 14, 2002, CHENG MING HSU, CHANG SHAN LIU and MAY LIU  caused the wire transfer of approximately $55,000 from the account of a co-conspirator at the Standard Chartered Bank in Hong Kong, China to a bank account in New

41

Jersey utilized by undercover agents, as payment for the agents' assistance in facilitating the importation and delivery of shipment 3.

## SHIPMENTS 4 AND 5

35.     On or about November 21, 2002, MAY LIU engaged in a telephone conversation with an undercover agent and discussed shipments 4 and 5.

36.     Prior to on or about November 27, 2002, CHENG MING HSU, CHANG SHAN LIU and MAY LIU, acting in concert with others, caused the transportation to Port Newark, New Jersey of two containers of counterfeit and contraband Marlboro and Marlboro Lights brand cigarettes totaling 2129 cases falsely listed on the bills of lading and invoices as wicker and rattan products (shipments 4 and 5).

37.     On or about December 4, 2002, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and discussed retrieval of a portion of shipments 4 and 5 from an undercover warehouse in New Jersey.

38.     On or about December 9, 2002, CHENG MING HSU and CHANG SHAN LIU met with an undercover agent at a restaurant in Eatontown, New Jersey and informed the agent that 100 cases of counterfeit and contraband cigarettes from shipments 4 and 5 would be picked up from the undercover warehouse and delivered to Queens, New York, that the agent would receive $100,000 payment after the first delivery, that CHENG MING HSU would provide the agent with between $150,000-$200,000 to wire transfer to overseas bank accounts at 4% commission and that CHENG MING HSU was meeting a second buyer on December 11, 2002.

39.     On or about December 10, 2002, CHENG MING HSU and CHANG SHAN LIU met with an undercover agent in New Jersey, toured the undercover warehouse where the

42

counterfeit and contraband cigarettes were stored, informed that agent that the pick-up would be the next day, discussed the payment of $100,000 to the agent and indicated that the second buyer was traveling from the west coast.

40.     On or about December 12, 2002, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused and directed the retrieval and transportation of approximately 100 cases of counterfeit and contraband cigarettes from shipments 4 and 5 from the undercover warehouse in New Jersey to an unknown location in New York.

41.     On or about December 12, 2002, CHENG MING HSU, CHANG SHAN LIU and co-defendant Chang Huo Jung took possession of approximately 100 cases of counterfeit and contraband cigarettes at the undercover warehouse which were transported by Jung in a rental truck to an unknown location in New York.

42.     On or about December 19, 2002, CHANG SHAN LIU met with an undercover agent at a restaurant in Tinton Falls, New Jersey, discussed payment for the agent's importation services related to shipments 4 and 5.

43.     On or about December 20, 2002, co-defendant Shuang Ying Huang met with an undercover agent in Hacienda Heights, California and paid the agent $60,000 for the importation services provided by undercover agents related to shipments 4 and 5.

44.     On or about January 20, 2003, CHANG SHAN LIU met with undercover agents in Atlantic City, New Jersey, provided agents an additional $20,500 for the importation services related to shipments 4 and 5, informed the agents that CHENG MING HSU would pay the remaining $20,000 and discussed the retrieval of additional counterfeit and contraband cigarettes from shipments 4 and 5 from the undercover warehouse and money laundering services for

43

CHENG MING HSU.

45.    On or about January 27, 2003, CHENG MING HSU and CHANG SHAN LIU met with undercover agents in Atlantic City, New Jersey, provided agents an additional $20,000 for the importation services related to shipments 4 and 5, discussed money laundering services offered by the agents and arranged the retrieval of counterfeit and contraband cigarettes from the undercover warehouse.

46.    On or about January 29, 2003, undercover agents purchased 100 cases from shipments 4 and 5 from CHENG MING HSU, CHANG SHAN LIU and MAY LIU for $30,000.

47.    On or about January 29, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and discussed the delivery of 100 cases from shipments 4 and 5 to a buyer in Chicago and the retrieval of counterfeit and contraband cigarettes from the undercover warehouse by buyers found by CHENG MING HSU.

48.    On or about February 11, 2003, CHANG SHAN LIU and a co-conspirator not named as a defendant herein met with undercover agents and informed the agents that 100 cases of counterfeit and contraband cigarettes from shipments 4 and 5 were to be delivered to Chicago, Illinois.

49.    On or about February 11, 2003 CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused the delivery by a co-conspirator not named as a defendant herein of approximately 100 cases from shipments 4 and 5 from the undercover warehouse in New Jersey to an unknown location in Chicago, Illinois.

50.    On or about February 19, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and provided the agent with a telephone number for

CHENG MING HSU.

51.     On or about February 19, 2003, co-defendant Hua You rented a storage locker at Affordable Self Storage in Egg Harbor, New Jersey using a false California driver's license in the name "Lee Fan Ming" and rented a U-Haul truck later used to transport 200 cases from shipments 4 and 5.

52.     On or about February 19, 2003, CHENG MING HSU, co-defendant Hua You and a co-conspirator not named as defendant herein retrieved 200 cases from shipments 4 and 5 from the undercover warehouse and transported the cigarettes in a rental truck to an unknown location.

53.     On or about February 19, 2003, CHENG MING HSU met with undercover agents and informed the agents that he would pay the agents a 4% commission to use their money laundering services and that he expected to receive money from a buyer of counterfeit and contraband cigarettes later that night.

54.     On or about February 20, 2003, CHENG MING HSU and CHANG SHAN LIU met with undercover agents in Atlantic City, New Jersey, provided the agents with $52,000, instructed the agents to wire transfer $50,000 to an account at the Grand Commercial Bank in Taipei, Taiwan, discussed additional deliveries of counterfeit and contraband cigarettes, furnished a sample 30 pill bottle of counterfeit Viagra and explored the possibility of smuggling counterfeit cigarettes to Toronto, Canada.

55.     On or about February 21, 2003, an undercover agent, at the direction of CHEN MING HSU and CHANG SHAN LIU, caused the wire transfer of $50,000 from a bank account maintained by undercover agents to an account at the Grand Commercial Bank in Taipei, Taiwan.

56.     On or about February 25, 2003, CHENG MING HSU and CHANG SHAN LIU met with undercover agents in Atlantic City, New Jersey, asked agents to wire transfer $60,000-$70,000 to a new bank account in Taiwan, arranged for the retrieval of 300 cases from the undercover warehouse and agreed to send a case of counterfeit Viagra pills in the next shipment of counterfeit and contraband cigarettes.

57.     On or about February 26, 2003, co-defendant Hua You rented a storage locker at Affordable Self Storage in Egg Harbor, New Jersey in the name of "Lee Fan Ming" and a second co-conspirator not named as a defendant herein rented a U-Haul truck later used to transport 300 cases from shipments 4 and 5.

58.     On or about February 26, 2003, CHENG MING HSU, co-defendant Hua You and a co-conspirator not named as defendant herein retrieved 300 cases from shipments 4 and 5 from the undercover warehouse, transported the cigarettes to Affordable Self Storage and unloaded the cigarettes into the storage locker rented by co-defendant Hua You.

59.     On or about February 27, 2003, CHENG MING HSU and CHANG SHAN LIU met with undercover agents in Atlantic City, New Jersey, provided the agents with $20,800 and instructed the agents to wire transfer $20,000 to an account in the name of the Koh Ching Trading Company at the Liu Chong Hing Bank Limited in Hong Kong, China.

60.     On or about March 3, 2003, an undercover agent, at the direction of CHENG MING HSU and CHANG SHAN LIU caused the wire transfer of $20,000 to an account in the name of the Koh Ching Trading Company at the Liu Chong Hing Bank Limited in Hong Kong, China.

61.     On or about March 5, 2003, CHANG SHAN LIU sent to undercover agents

in New Jersey by facsimile transmission instructions regarding the next delivery of counterfeit and contraband cigarettes from shipments 4 and 5.

62.     On or about March 7, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused and directed the transportation by a co-conspirator not charged herein of 225 cases from shipments 4 and 5 from the undercover warehouse in New Jersey to Chicago, Illinois.

63.     On or about March 12, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and informed the agent that 475 cases from shipments 4 and 5 would be delivered to Chicago, Illinois and the remainder would be delivered to Los Angeles, California.

64.     On or about March 14, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and discussed the delivery of counterfeit and contraband cigarettes to Chicago, Illinois and Los Angeles, California.

65.     On or about March 18, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused and directed the delivery by a co-conspirator not charged herein of 200 cases from shipments 4 and 5 from the undercover warehouse in New Jersey to Chicago, Illinois.

66.     On or about March 19, 2003, co-defendants Tie Hua Chen and Hua You went to the Affordable Self Storage in Egg Harbor, New Jersey, paid rent for two storage lockers and purchased a new padlock.

67.     On or about March 19, 2003, MAY LIU engaged in a telephone conversation with an undercover agent and discussed the co-conspirator from Chicago who picked up the 200 cases of from shipment 4 and 5.

68.     On or about March 24, 2003, co-defendant Tie Hua Chen went to Affordable

47

Self Storage in Egg Harbor, New Jersey, and moved boxes from one storage locker to another.

69.     On or about March 25, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent, discussed the next delivery of counterfeit and contraband cigarettes to a location in El Monte, California and provided a contact number for the co-conspirator who would take possession of the cigarettes in El Monte, California.

70.     On or about March 27, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and inquired whether the agent had an associate in Chicago to assist in the money laundering services rendered by the agents.

71.     On or about March 27, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused the delivery of 100 cases of counterfeit and contraband cigarettes from shipments 4 and 5 from the undercover warehouse in New Jersey to a warehouse in Franklin Park, Illinois, where co-conspirators not named as defendants herein took possession of the cigarettes.

72.     On or about March 29, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and received a contact number for an undercover agent in Chicago to whom CHANG SHAN LIU would deliver proceeds from the delivery of counterfeit and contraband cigarettes.

73.     On or about March 31, 2003, an undercover agent called the contact number previously provided by CHANG SHAN LIU and engaged in a conversation with a co-conspirator not named as a defendant herein to arrange delivery of counterfeit and contraband cigarettes to El Monte, California.

74.     On or about April 1, 2003, CHENG MING HSU, CHANG SHAN LIU, MAY

48

LIU and CO KHANH TANG caused the delivery of 807 cases of counterfeit and contraband cigarettes from shipments 4 and 5 from the undercover warehouse in New Jersey to the parking lot of the business Lucky 777 in El Monte, California, where co-conspirators not named as defendants herein employed by CO KHANH TANG took possession of the cigarettes.

75.     On or about April 1, 2003, CHANG SHAN LIU and MAY LIU met with an undercover agent in Chicago, Illinois and provided the agent with a bag containing $60,000.

76.     On or about April 11, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent, provided the agent with the name "CHENG MING HSU" to place on a cashier's check and made arrangements to meet in Delaware.

77.     On or about April 15, 2003, CHANG SHAN LIU met with an undercover agent at a rest stop in Delaware, received from the agent a First Union Bank cashier's check in name of "CHENG MING HSU" in the amount of $57,600, provided the agent with $5,000 and discussed a mistake in the delivery of 100 cases of counterfeit and contraband cigarettes to a warehouse in Franklin Park, Illinois and the arrival of the next container of counterfeit and contraband cigarettes (shipment 6).

78.     On or about April 18, 2003, a co-conspirator who worked for CO KHANH TANG picked up 450 cases from shipments 4 and 5 from the Affordable Self Storage in a Ryder rental truck, in the presence of co-defendants Tie Hua Chen and Hua You, and was arrested transporting the cigarettes to an unknown location.

79.     On or about April 18, 2003, CHENG MING HSU deposited into an account maintained by HSU at the Cathay Bank, Los Angeles, California ("the Cathay Bank account") a First Union Bank cashier's check in name of "CHENG MING HSU" in the amount of $57,600.

80.     On or about April 19, 2003, CHENG MING HSU deposited into the Cathay Bank account a LaSalle Bank, N.A. cashier's check in name of "CHENG MING HSU" in the amount of $50,000 and nineteen money orders totaling approximately $20,000, which were forwarded to HSU by a co-conspirator not named as defendant herein.

81.     On or about April 22, 2003, CHENG MING HSU caused the wire transfer of approximately $107,600 from the Cathay Bank account to an account at the Bank of China, Hong Kong Ltd. in Hong Kong, China.

SHIPMENT 6

82.     On or about April 28, 2003, CHANG SHAN LIU sent to undercover agents in New Jersey by facsimile transmission the bill of lading, packing list and invoice for a container of counterfeit and contraband Marlboro, Marlboro Lights 100's and Newport 100's brand cigarettes totaling 841 cases and approximately 8000 counterfeit Viagra pills falsely listed on the bill of lading, packing list and invoice as wicker and rattan products (shipment 6).

83.     On or about May 9, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and discussed shipment 6, the presence of counterfeit Viagra pills in the shipment and the intended location of delivery.

84.     On or about May 14, 2003, co-defendant Wei Li Gu deposited into an account maintained by Gu at the Bank Fund Staff Federal Credit Union, Washington, D.C., a LaSalle Bank, N.A. cashier's check in name of "Wei Li Gu" in the amount of $2,500, which was forwarded to Gu by a co-conspirator not named as defendant herein.

85.     On or about May 14, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and discussed the date of arrival of shipment 6, the price

50