per pill for the counterfeit Viagra and arrangements for a meeting in Atlantic City, New Jersey.

86.     Prior to on or about May 15, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU, acting in concert with others, caused the transportation to Port Newark, New Jersey of shipment 6, which was comprised of 841 cases of counterfeit and contraband cigarettes and approximately 8000 counterfeit Viagra pills.

87.     On or about May 15, 2003, CHENG MING HSU deposited into the Cathay Bank account a LaSalle Bank, N.A. cashier's check in name of "CHENG MING HSU" in the amount of $17,000 and thirty money orders worth approximately $30,000, which were forwarded to HSU by a co-conspirator not named as defendant herein.

88.     On or about May 20, 2003, CHENG MING HSU caused the wire transfer of approximately $17,000 from an account maintained by CHENG MING HSU at the Cathay Bank, Los Angeles, California to the same account maintained at the Bank of China, Hong Kong Ltd. in Hong Kong, China that received a wire transfer of $107,600 on or about April 22, 2003.

89.     On or about May 22, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU sent to a customs broker in Philadelphia, Pennsylvania by facsimile transmission the bill of lading, packing list and invoice for a container of counterfeit Marlboro Lights and Newport 100's brand cigarettes totaling 898 cases falsely listed on the bill of lading, packing list and invoice as wicker and rattan products (shipment 7).

90.     On or about May 22, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and was told by the agent that shipment 6 contained 840 cases of counterfeit cigarettes.

91.     On or about May 23, 2003, CHANG SHAN LIU engaged in a telephone

conversation with an undercover agent and advised that a shipment of counterfeit cigarettes destined for a co-conspirator in Chicago, Illinois (shipment 7) might arrive at Port Newark on or about June 4th or 5th, 2003.

## SHIPMENT 7

92.     Prior to on or about June 3, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU, acting in concert with others, caused the transportation to Port Newark, New Jersey of a container of counterfeit Marlboro Lights and Newport 100's brand cigarettes totaling 898 cases falsely listed on the bill of lading, invoice and packing list as wicker and rattan products (shipment 7).

93.     On or about June 9, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and was informed by the agent that shipment 7 had arrived, that shipment 6 would be delivered to the west coast on or about June 24, 2003 and that CHENG MING HSU had to pay $20,000 to the agent prior to delivery to the west coast.

94.     On or about June 11, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent, informed the agent that CHENG MING HSU agreed to pay $20,000 before delivery of shipment 6 and asked the agent to send banking information by facsimile transmission to a telephone number used by CHANG SHAN LIU.

95.     On or about June 16, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and requested that an undercover agent in Chicago assist in wire transferring $59,000.

96.     On or about June 17, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused and directed the delivery of shipment 7 from the undercover warehouse in New

52

Jersey to a warehouse in Franklin Park, Illinois utilized by a co-conspirator not named as a defendant herein.

97.     On or about June 20, 2003, CHENG MING HSU and CHANG SHAN LIU caused the wire transfer of approximately $10,000 from an account at the First Commercial Bank in Taipei, Taiwan to an undercover bank account in New Jersey.

98.     On or about June 22, 2003, CHANG SHAN LIU met with an undercover agent in Oak Brook Terrace, Illinois and provided the agent with three bags which contained approximately $117,500 and instructions to wire transfer $55,300 to an account at the HSBC Bank, Hong Kong, China.

99.     On or about June 23, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and provided the agent with delivery instructions for shipment 6 and a contact telephone number for co-defendant Tat Chui Wong.

100.    On or about June 23, 2003, co-defendant Tat Chui Wong engaged in a telephone conversation with an undercover agent to arrange delivery of shipment 6.

101.    On or about June 24, 2003, co-defendants Tat Chui Wong and Ka Ho Stanley Au each rented a U-Hual truck used in the delivery and transfer of shipment 6.

102.    On or about June 24, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused the transportation of 839 cases of counterfeit and contraband cigarettes from shipment 6 from the undercover warehouse in New Jersey to a public storage facility in San Gabriel, California, where co-defendants Tat Chui Wong and Ka Ho Stanley Au took possession of the counterfeit cigarettes.

103.    On or about June 25, 2003, CHANG SHAN LIU met with undercover agents in

53

Alhambra, California, informed agents that CHENG MING HSU's wife was securing the

$19,000 owed to the agents, discussed meeting with CHENG MING HSU to discuss the security

of loads delivered to California and was informed by the agents that wire transfers would have to

be made to mainland China, Taiwan or Singapore rather than Hong Kong, China.

104.    On or about June 27, 2003, CHANG SHAN LIU met with an undercover agent in

Hacienda Heights, California and delivered $19,000 to the agent.

105.    On or about July 1, 2003, MAY LIU sent to an undercover agent in New

Jersey by facsimile transmission a document containing bank routing information for a wire

transfer.

106.    On or about July 3, 2003, an undercover agent, at the direction of CHEN MING

HSU, CHANG SHAN LIU and MAY LIU caused the wire transfer of $55,300 to an account in

the name of the Fujian Ningde Baoxin Economy Develop Company, Ltd, at the China

Construction Bank, Fujian Branch, in China.

107.    On or about July 3, 2003, CHANG SHAN LIU engaged in a telephone

conversation with an undercover agent and was informed that the wire transfer had been

completed.

## SHIPMENT 8

108.    On or about July 14, 2003, CHANG SHAN LIU sent to undercover agents in

New Jersey by facsimile transmission the bill of lading, invoice and packing list for a container

of counterfeit Newport 100's brand cigarettes totaling 884 cases falsely listed on the bill of

lading, invoice and packing list as wicker and rattan products (shipment 8).

109.    On or about July 23, 2003, CHANG SHAN LIU and MAY LIU met with

undercover agents in Atlantic City, New Jersey, were introduced to a Royal Canadian Mounted Police ("RCMP") undercover agent and discussed the delivery and importation of shipments of counterfeit and contraband cigarettes into Canada.

110.   On or about July 24, 2003, CHANG SHAN LIU and MAY LIU met with undercover agents in Atlantic City, New Jersey, informed the agents that CHENG MING HSU had two shipments of counterfeit and contraband cigarettes ready for transportation, and were asked by the agents to provide a sample of "Player's Lights" Canadian cigarettes.

111.   Prior to on or about July 28, 2003, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG, acting in concert with others, caused the transportation to Port Newark, New Jersey of shipment 8.

112.   On or about July 29, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent, informed the agent that he had a sample of "Player's" cigarettes and agreed to a meeting between the agent and CHENG MING HSU prior to the shipment of counterfeit cigarettes being delivered to Canada.

113.   On or about August 16, 2003, CHEN MING HSU and CHANG SHAN LIU met with undercover agents in Atlantic City, New Jersey, provided the agents with sample cartons of counterfeit Player's Lights and duMaurier cigarettes, offered to pay an undercover agent $65,000 to smuggle containers of counterfeit cigarettes into Canada and provided the agents with a bill of lading, invoice and packing list for a container of counterfeit Player's Lights and duMaurier brand cigarettes totaling 1103 cases falsely listed on the bill of lading, invoice and packing list as wicker and rattan products (shipment 9).

114.   On or about August 21, 2003, CO KHANH TANG met with undercover agents in

Atlantic City, advised the agents that he was thinking about breaking away from CHENG MING

HSU and solicited the assistance of the agents in smuggling containers of counterfeit cigarettes to

Canada.

115.    On or about August 26, 2003, CHENG MING HSU, CHANG SHAN LIU and

MAY LIU caused the transportation of 250 cases from shipment 8 from the undercover

warehouse to a storage facility in North Bergen, New Jersey, where co-defendants Nhi Lam

Wiget and Yang Guang Lu took possession of the cigarettes and loaded them into storage

lockers.

116.    On or about August 26, 2003, CO KHANH TANG met with undercover agents in

Buena, New Jersey and advised the agents that he was a distributor for CHENG MING HSU and

that he controlled the loads being transferred that day.

117.    On or about August 26, 2003, CHENG MING HSU and CHANG SHAN LIU met

with undercover agents and provided agents with the bill of lading for a container of counterfeit

Newport 100's and State Express 555 brand cigarettes totaling 876 cases falsely listed on the bill

of lading as wicker and rattan products (shipment 10).

118.    On or about August 27, 2003, co-defendant Nhi Lam Wiget rented a storage

locker at Atlantic Trailer Leasing Corporation in Tabernacle, New Jersey using the alias "Tse

Kwai Ping."

119.    On or about August 27, 2003, CHENG MING HSU, CHANG SHAN LIU,

MAY LIU and CO KHANH TANG caused the delivery of 325 cases of counterfeit and

contraband cigarettes from shipment 8 from the undercover warehouse in New Jersey to the

Atlantic Trailer Leasing Corporation storage facility in Tabernacle, New Jersey, where co-

defendants Nhi Lam Wiget and Yang Guang Lu took possession of the cigarettes and loaded the cigarettes into a storage locker.

120.    On or about August 27, 2003, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG caused the delivery of 309 cases of counterfeit and contraband cigarettes from shipment 8 from the undercover warehouse in New Jersey to an unknown location.

## SHIPMENT 9

121.    Prior to on or about September 2, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU, acting in concert with others, caused the transportation to Port Newark, New Jersey of a container of counterfeit and contraband Player's Lights and duMaurier brand cigarettes totaling 1103 cases falsely listed on the bill of lading, invoice and packing list as wicker and rattan products (shipment 9).

122.    On or about September 3, 2003, MAY LIU met with an undercover agent in Delaware, provided $50,000 to the agent for the agent's importation services for shipment 8, discussed money laundering for CHENG MING HSU and discussed the smuggling of future containers of counterfeit cigarettes.

## SHIPMENT 10

123.    On or about September 17, 2003, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG, acting in concert with others, caused the transportation to Port Newark, New Jersey of a container of counterfeit Newport 100's and State Express 555 brand cigarettes totaling 876 cases falsely listed on the bill of lading, invoice and packing list as wicker and rattan products (shipment 10).

124.    On or about October 6, 2003, CHANG SHAN LIU caused the transmission of an electronic mail message (hereafter "e-mail") to an undercover e-mail account and inquired about the RCMP undercover agent and advised that a retrieval of counterfeit cigarettes would occur soon.

125.    On or about October 8, 2003, CHANG SHAN LIU caused the transmission of an e-mail to an undercover e-mail account, advised that the retrieval of counterfeit cigarettes from the undercover warehouse would occur the following week and requested that the agent contact the RCMP undercover agent regarding the smuggling of a container of counterfeit cigarettes to Canada.

126.    On or about October 10, 2003, CHANG SHAN LIU caused the transmission of an e-mail to an undercover e-mail account and advised that the retrieval of counterfeit cigarettes from the undercover warehouse would occur on October 15, 2003.

127.    On or about October 14, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and advised the agent that part of the container of counterfeit and contraband cigarettes would be retrieved the next day.

128.    On or about October 15, 2003, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG caused the retrieval of 455 cases from shipment 10 from the undercover warehouse in New Jersey by co-defendant Nhi Lam Wiget and a co-conspirator not named as a defendant herein.

129.    On or about October 15, 2003, co-defendant Nhi Lam Wiget and a co-conspirator not named as a defendant herein were arrested transporting 455 cases of counterfeit and contraband cigarettes from shipment 10 in a rental truck from the undercover warehouse to an

unknown location.

130.    On or about October 16, 2003, CHANG SHAN LIU met with an undercover agent in Atlantic City , New Jersey, informed the agents that he and CHENG MING HSU lost approximately $150,000 due to the arrests of the drivers, asked the agents to transport the remainder of shipment 10 to the West Coast and inquired about transportation of shipment 9 to Canada.

131.    On or about October 30, 2003, CHANG SHAN LIU caused the transmission of an e-mail to an undercover e-mail account and advised that the money owed to the agent would ready next week and inquired when shipment 9 would be transported to Canada.

132.    On or about October 31, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused the wire transfer of approximately $50,000 from an account at the General Bank (now Cathay Bank), City of Industry, California to an undercover bank account as payment for importation services related to shipment 10.

133.    On or about November 12, 2003, CHANG SHAN LIU engaged in a telephone conversation with an undercover agent and discussed the transportation of shipment 9 to Canada and the remainder of shipment 10 to California.

134.    On or about November 17, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused the transportation of shipment 9 from the undercover warehouse in New Jersey to Canada.

135.    On or about November 20, 2003, CHEN MING HSU, and CHANG SHAN LIU met with undercover agents in Markham, Ontario, Canada, and discussed delivery of shipment 9 to a warehouse in Scarborough, Ontario and the payment of money owed to the agents.

136.    On or about November 20, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused the delivery of shipment 9 from an undercover warehouse in Canada to a warehouse in Scarborough, Ontario, Canada where co-conspirators not named as defendants herein took possession of the cigarettes.

137.    On or about November 25, 2003, CHANG SHAN LIU met with undercover agents in a hotel in Markham, Ontario, Canada and provided the agents with $70,000 Canadian dollars for their importation and delivery services related to shipment 9.

138.    On or about December 2, 2003, CHENG MING HSU, CHANG SHAN LIU and MAY LIU caused the delivery of 421 cases of counterfeit and contraband cigarettes from shipment 10 from an undercover warehouse in California to a warehouse in Rancho Dominguez, California, where co-defendant Ching Yu Guo took possession of the cigarettes.

139.    On or about December 12, 2003, MAY LIU met with an undercover agent in Atlantic City, New Jersey and discussed the agent's refusal to import additional containers of counterfeit cigarettes for CHENG MING HSU, CHANG SHAN LIU and MAY LIU.

140.    On or about December 17, 2003, MAY LIU engaged in a telephone conversation with an undercover agent and discussed money owed to the agent for the deliveries of counterfeit cigarettes to Canada and California.

141.    On or about December 25, 2003, CHANG SHAN LIU caused the transmission of an e-mail to an undercover e-mail account, advised that he had the money owed to the agent and requested a meeting after the new year.

142.    On or about January 20, 2004, CHANG SHAN LIU and MAY LIU met with undercover agents in Atlantic City, New Jersey, provided the agents with $6,300 owed for

transportation and delivery services related to shipments 9 and 10 and were informed by agents that the importation and transportation cost for future containers of counterfeit cigarettes would be $75,000 per container.

All in violation of Title 18, United States Code, Section 1962(d).

## FIRST FORFEITURE ALLEGATION

1.      The allegations in Count One are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.  Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Count One of this Indictment.

2.      The defendants, CHENG MING HSU, CHANG SHAN LIU, MAY LIU and CO KHANH TANG:

        i.      have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

        ii.     have property constituting and derived from proceeds which they obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States of America pursuant to Title 18, United States Code, Section 1963(a)(3).

3.      The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1) and (3) include but are not limited to at least five million dollars ($5,000,000).

4.      If any of the property described in paragraphs 2 and 3 above, as a result of any act or omission of a defendant:

        (1)     cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or disposed with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

the Court shall order the forfeiture of any other property of the defendants up to the value of any property set forth in paragraphs 2 and 3 above pursuant to Title 18, United States Code, Section 1963(m);

5.   The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

All pursuant to the Title 18, United States Code, Section 1963.

## COUNT TWO
### (Conspiracy to Smuggle Cigarettes into the United States, Traffic in Contraband Cigarettes and Traffic in Counterfeit Cigarettes)

1.      The Grand Jury re-alleges and incorporates the Introduction and Overt Acts alleged in Count One as if fully set forth herein.

2.      Beginning in or about January 2000, and continuing through the date of this Indictment, in the District of New Jersey, the Eastern District of New York, the Central District of California, the Northern District of Illinois and elsewhere, the Defendants,

**CHENG MING HSU,**
a/k/a "Bruce,"
**CHANG SHAN LIU,**
a/k/a "Charles Liu,"
**MAY LIU,**
a/k/a "May Chin,"
**CO KHANH TANG,**
a/k/a "Keith,"
**XIAO FENG WEI,**
a/k/a "Chen Wen Juan,"
a/k/a "Mr. Chen,"
**WEI LI GU,**
**SHEN WEN CHEN,**
**CHANG HUO JUNG,**
**SHUANG YING HUANG,**
a/k/a "Tina,"
**HUA YOU,**
a/k/a "Lee Fan Ming,"
a/k/a "Richard,"
a/k/a "Ah Keung,"
**TIE HUA CHEN,**
**TAT CHUI WONG,**
a/k/a "Sunny,"
**KA HO STANLEY AU,**
**NHI LAM WIGET,**
a/k/a "Kwai Ping Tse,"
a/k/a "Nicky Wong,"
**YANG GUANG LU,**
a/k/a "Eddie Lu,"

a/k/a "Lu Guang Yang,"
a/k/a "Eric Ho,"
a/k/a "Yang Lu,"
a/k/a "Mike"
and
**CHING YU GUO,**
a/k/a "Michael Guo"

did knowingly and willfully conspire and agree with each other, with other unindicted co-conspirators, and with others both known and unknown to the grand jury, to commit the following offenses against the United States, that is:

1)     to fraudulently and knowingly import and bring into the United States merchandise, namely, counterfeit and contraband cigarettes, contrary to law, and receive, conceal, buy, sell and facilitate the transportation, concealment and sale of such counterfeit and contraband cigarettes after importation, knowing the counterfeit and contraband cigarettes to have been imported and brought into the United States contrary to law, contrary to Title 18, United States Code, Section 545;

2)     to intentionally traffic in goods, namely, cigarettes and Viagra pills, and knowingly use counterfeit marks on and in connection with such cigarettes and Viagra pills, contrary to Title 18, United States Code, Section 2320(a) and

3)     to knowingly ship, transport, receive, possess, sell, distribute and purchase contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, a quantity in excess of 60,000 cigarettes, which bear no evidence of the payment of applicable state cigarette taxes in the state where such cigarettes are found, namely the states of New Jersey, New York, California, and Illinois, which require a stamp, impression and other indication to be placed on packages of cigarettes to evidence the

65

payment of cigarette taxes, contrary to Title 18, United States Code, Section 2342(a);

All in violation of Title 18, United States Code, Section 371.

## COUNTS THREE Through TWELVE
### (Smuggling Contraband and Counterfeit Cigarettes and Counterfeit Viagra)

1.      The Grand Jury re-alleges and incorporates the Introduction and the Overt Acts alleged in Count One as if fully set out herein.

2.      On or about the dates alleged below, in the District of New Jersey, the Eastern District of New York, the Central District of California, the Northern District of Illinois, and elsewhere, the Defendants set forth below knowingly, willfully and with intent to defraud the United States, did smuggle and clandestinely introduce into the United States, merchandise, namely counterfeit and contraband cigarettes and counterfeit Viagra pills, in the amounts alleged below, which should have been invoiced and did make out and pass and cause the making out and passing of false, forged and fraudulent invoices, documents and paper, and did fraudulently and knowingly receive, conceal, buy, sell, and facilitate the transportation, concealment and sale of such merchandise after importation, knowing the counterfeit and contraband cigarettes and counterfeit Viagra pills to have been imported and brought into the United States contrary to law, in that Defendants failed to invoice such merchandise and did file and pass and cause the filing and passing of false, forged and fraudulent invoices, documents and paper pertaining to said merchandise, contrary to Title 18, United States Code, Sections 542, 1001, and  Title 19, United States Code, Sections 1481:

| Count | Date(s) | Defendant(s) | Number of Cases, Cigarettes and Viagra |
|---|---|---|---|
| 3 | December 16, 2001 through January 11, 2002 | CHENG MING HSU, CHANG SHAN LIU, MAY LIU, XIAO FENG WEI, WEI LI GU and SHEN WEN CHEN | 846 cases; 8,460,000 cigarettes |
| 4 | July 17, 2002 through August 7, 2002 | CHENG MING HSU, CHANG SHAN LIU and MAY LIU | 864 cases; 8,640,000 cigarettes |
| 5 | October 23, 2002 through November 7, 2002 | CHENG MING HSU, CHANG SHAN LIU and MAY LIU | 1,050 cases; 10,500,000 cigarettes |
| 6 | November 27, 2002 through April 1, 2003 | CHENG MING HSU, CHANG SHAN LIU, MAY LIU, CO KHANH TANG, CHANG HUO JUNG, SHUANG YING HUANG, HUA YOU and TIE HUA CHEN | 2,129 cases; 21,290,000 cigarettes |
| 7 | May 15, 2003 through June 24, 2003 | CHENG MING HSU, CHANG SHAN LIU, MAY LIU, TAT CHUI WONG and KA HO STANLEY AU | 841 cases; 8,410,000 cigarettes |
| 8 | May 15, 2003 | CHENG MING HSU, CHANG SHAN LIU and MAY LIU | Approximately 8000 Viagra Pills |

| Count | Date(s) | Defendant(s) | Number of Cases, Cigarettes and Viagra |
|---|---|---|---|
| 9 | June 3, 2003 through June 17, 2003 | **CHENG MING HSU, CHANG SHAN LIU and MAY LIU** | 898 60 carton cases; 10,776,000 cigarettes |
| 10 | July 28, 2003 through August 27, 2003 | **CHENG MING HSU, CHANG SHAN LIU, CO KHANH TANG, MAY LIU, NHI LAM WIGET and YANG GUANG LU** | 884 cases; 8,840,000 cigarettes |
| 11 | September 2, 2003 through November 17, 2003 | **CHENG MING HSU, CHANG SHAN LIU and MAY LIU** | 1,103 cases; 11,030,000 cigarettes |
| 12 | September 17, 2003 through December 2, 2003 | **CHENG MING HSU, CHANG SHAN LIU, CO KHANH TANG, MAY LIU and CHING YU GUO** | 475 cases; 401 (60 carton cases); 9,562,000 cigarettes |

In violation of Title 18, United States Code, Sections 545 and 2.

## SECOND FORFEITURE ALLEGATION

1. The allegations contained in Counts 3 through 12 are incorporated as if set forth at length herein for the purposes of noticing forfeiture, pursuant to Title 18, United States Code, Section 982(a)(2).

2. As the result of committing one or more of the smuggling offenses in violation of 18 U.S.C. § 545, alleged in Counts 3 through 12 of this Complaint, defendants CHENG MING HSU, CHANG SHAN LIU, MAY LIU, CO KHANH TANG, XIAO FENG WEI, WEI LI GU, SHEN WEN CHEN, CHANG HUO JUNG, SHUANG YING HUANG, HUA YOU, TIE HUA CHEN, TAT CHUI WONG, KA HO STANLEY AU, NHI LAM WIGET, YANG GUANG LU and CHING YU GUO shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(2)(B), any property that constitutes or is derived from proceeds the defendant obtained directly or indirectly, as a result of such violation, including but not limited to the following:

1. MONEY JUDGMENT

A sum of money equal to $5,000,000 in United States currency, representing the amount of proceeds obtained as a result of the offense, smuggling counterfeit and contraband cigarettes, for which the defendants are jointly and severally liable.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

    (1) cannot be located upon the exercise of due diligence;

    (2) has been transferred or sold to, or deposited with, a third person;

    (3) has been placed beyond the jurisdiction of the Court;

    (4) has been substantially diminished in value; or

(5)  has been commingled with other property which cannot be subdivided without

difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other

property of said defendant(s) up to the value of the above forfeitable property,

pursuant to Title 18, United States Code, Section 982(a)(2)(B).

## COUNTS THIRTEEN through TWENTY TWO
### (Trafficking in Goods Bearing Counterfeit Marks)

1.      The Grand Jury re-alleges and incorporates the Introduction and the Overt Acts alleged in Count One as if fully set forth herein.

2.      On or about the dates alleged below, in the District of New Jersey, the Eastern District of New York, the Central District of California, the Northern District of Illinois, and elsewhere, the Defendants set forth below did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, cigarettes and Viagra pills, and did knowingly use and aid and abet the use of counterfeit marks, as alleged below, on and in connection with such goods, which marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which marks were likely to cause confusion, to cause mistake and to deceive:

| Count | Date(s) | Defendant(s) | Counterfeit Merchandise and Counterfeit Marks |
|-------|---------|--------------|------------------------------------------------|
| 13 | December 16, 2001 through January 11, 2002 | **CHENG MING HSU, CHANG SHAN LIU, MAY LIU, XIAO FENG WEI, WEI LI GU and SHEN WEN CHEN** | 846 cases; 8,460,000 cigarettes; Marlboro |
| 14 | July 17, 2002 through August 7, 2002 | **CHENG MING HSU, CHANG SHAN LIU and MAY LIU** | 864 cases; 8,640,000 cigarettes; Marlboro Marlboro Lights |

| Count | Date(s) | Defendant(s) | Counterfeit Merchandise and Counterfeit Marks |
|---|---|---|---|
| 15 | October 23, 2002 through November 7, 2002 | **CHENG MING HSU, CHANG SHAN LIU and MAY LIU** | 1,050 cases; 10,500,000 cigarettes; Marlboro |
| 16 | November 27, 2002 through April 1, 2003 | **CHENG MING HSU, CHANG SHAN LIU, MAY LIU, CO KHANH TANG, CHANG HUO JUNG, SHUANG YING HUANG, HUA YOU and TIE HUA CHEN** | 2,129 cases; 21,290,000 cigarettes; Marlboro Marlboro Lights |
| 17 | May 15, 2003 through June 24, 2003 | **CHENG MING HSU, CHANG SHAN LIU, MAY LIU, TAT CHUI WONG and KA HO STANLEY AU** | 841 cases; 8,410,000 cigarettes; Marlboro Marlboro Light 100's Newport 100's |
| 18 | May 15, 2003 | **CHENG MING HSU, CHANG SHAN LIU and MAY LIU** | Approximately 8000 Pills; Viagra |
| 19 | June 3, 2003 through June 17, 2003 | **CHENG MING HSU, CHANG SHAN LIU and MAY LIU** | 898 60 carton cases; 10,776,000 cigarettes; Marlboro Lights Newport |
| 20 | July 28, 2003 through August 27, 2003 | **CHENG MING HSU, CHANG SHAN LIU, MAY LIU, CO KHANH TANG, NHI LAM WIGET and YANG GUANG LU** | 884 cases; 8,840,000 cigarettes; Newport 100's |

| Count | Date(s) | Defendant(s) | Counterfeit Merchandise and Counterfeit Marks |
|-------|---------|--------------|-----------------------------------------------|
| 21 | September 2, 2003 through November 17, 2003 | **CHENG MING HSU, CHANG SHAN LIU and MAY LIU** | 1,103 cases; 11,030,000 cigarettes duMaurier Lights Player's Lights |
| 22 | September 17, 2003 through December 2, 2003 | **CHENG MING HSU, CHANG SHAN LIU, MAY LIU, CO KHANH TANG and CHING YU GUO** | 455 cases; 421 60 carton cases; 9,562,000 cigarettes; Newport 100 State Express 555 |

In violation of Title 18, United States Code, Sections 2320(a) and 2.

74

## COUNTS TWENTY THREE through FORTY TWO
### (Trafficking in Contraband Cigarettes)

1.      The Grand Jury re-alleges and incorporates the Introduction and the Overt Acts alleged in Count One as if fully set out herein.

2.      On or about the dates alleged below, in the District of New Jersey, the Eastern District of New York, the Central District of California, the Northern District of Illinois, and elsewhere, the Defendants set forth below did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase and cause the shipment, transportation, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), in the approximate amount(s) set forth below, which bore no evidence of the payment of applicable state cigarette taxes for the state(s) alleged below:

| Count | Date(s) and state(s) | Defendant(s) | Number of Cases and Cigarettes |
|-------|----------------------|--------------|--------------------------------|
| 23 | On or about January 8, 2002; New York | **CHENG MING HSU, CHANG SHAN LIU, MAY LIU, XIAO FENG WEI and WEI LI GU** | 350 cases; 3,500,000 cigarettes |
| 24 | On or about January 11, 2002; New York | **CHENG MING HSU, CHANG SHAN LIU, MAY LIU, XIAO FENG WEI, WEI LI GU and SHEN WEN CHEN** | 495 cases; 4,950,000 cigarettes |
| 25 | On or about August 7, 2002; California | **CHENG MING HSU, CHANG SHAN LIU and MAY LIU** | 864 cases; 8,640,000 cigarettes |